# Chase to use, etc. *versus* Hubbard and Wife.

1. The bond of a married woman accompanying a mortgage given by her upon her land in order to secure the purchase money thereof constitutes a valid obligation which may be enforced against the particular land in question. Shnyder *v*. Noble, 13 Norris 286, followed.

2. The Supreme Court will not reverse for an error which it is evident has done no injury to the person complaining thereof.

3. A. and wife purchased a lot of ground, giving their joint bond and mortgage to secure part of the purchase money. Subsequently they sold one-half of the lot to B., who agreed to pay part of the purchase money on account of the mortgage. C., afterwards, with knowledge of the arrangement between A. and wife and B., took an assignment of the bond and mortgage, and also procured from B. a conveyance of his one-half of the lot. Various payments had been made on account of the mortgage, leaving due thereon only the amount which B. had agreed to pay. In an action by C. against A. and wife upon their joint bond, to recover the unpaid balance, the court charged that as A.'s wife was, at the time of the execution of the bond in suit, a married woman, no judgment could be recovered against her. *Held*, that as the bond was given to secure the purchase money of land conveyed to defendants, this instruction was erroneous; but, inasmuch as in the event of recovery by the plaintiff, defendants would have a right to recover back from him the sum paid, by process of subrogation, he was not entitled to judgment.

[Chase, to use v. Hubbard.]

November 21st 1881.  Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ.  PAXSON, J., absent.

Error to the Court of Common Pleas of *Crawford county:* Of October and November Term 1881, No. 144.

Debt, by Sarah A. Chase, survivor of Edward H. Chase, to the use of Watson and Pierce against Asher S. Hubbard and Mary E. Hubbard, his wife, upon a joint and several bond for $4,000 given by defendants to plaintiff Sarah A. Chase and Edward H. Chase, deceased.  Judgment was entered upon this bond by virtue of the warrant of attorney thereto annexed, on November 19th 1877 in the sum of $1,054.94, that being the amount alleged to be due and unpaid thereon.

Subsequently, on application of defendants, the court opened this judgment as to all in excess of $743.54 with interest thereon.  This amount, viz., $840.44, being paid into court, defendants pleaded as to the residue of the bond, "payment with leave," and as to defendant Mary E. Hubbard, "coverture."

On the trial before CHURCH, P. J., the facts of the case appeared to be as follows:—On February 6th 1871, Edward H. Chase and Sarah A., his wife, sold and conveyed a lot of ground in the city of Titusville to defendant Mary E. Hubbard for the sum of $1,000.  The residue of the purchase money was secured by a mortgage given by both defendants to Chase and wife for $3,000, which mortgage was accompanied by the bond in suit.

In May 1871 defendants conveyed one-half the lot to A. H. Carr for the sum of $2,000.  One-half of this sum Carr paid in cash, the remaining half he agreed to pay on account of the Chase mortgage.  He gave also his note to defendants for said remaining half, which was, however, never paid.  From time to time defendants paid off various sums on account of the mortgage, leaving due thereon, in January 1879, about $2,000. During that month Watson and Pierce, the use plaintiffs, took an assignment of the Chase bond and mortgage, paying value therefor.  There was evidence to show that, at the time of this assignment, Hubbard notified Watson and Pierce of the amount due and also of the arrangement with Carr, and that said Watson and Pierce had agreed with him to look to Carr for payment of $1,000 of the amount, still due upon the mortgage.

On September 11th 1879 Watson and Pierce purchased the land conveyed to Carr, at a sheriff's sale under an execution issued against it by P. T. Winthrop a judgment creditor of said Carr.  This sale was made subject expressly to the Chase mortgage.  Defendants subsequently paid further installments on account of said mortgage.  Edward H. Chase afterwards died, whereupon the present suit was instituted.

[Chase, to use *v.* Hubbard.]

The court charged, inter alia, as follows:—" [It is a rule of law, to which there is no exception, or, but one exception, and that I will advert to presently, that a bond given by a married woman is absolutely void.

" The law makes one exception, and only one; that is, when a bond is given for purchase money of real estate, it is valid as against the real estate purchased. Not that it changes the rule in that it gives a married woman greater power to contract, but because the law, in its equity, will not permit a married woman to hold real estate and not pay the purchase money of it. In other words, when she has promised to pay purchase money, it is her duty to pay; it is, as it were, a part of the title by which she is to hold her estate, and law and equity step in and say she cannot hold it without paying the price. We say to you, this is so where there is no other security given than a judgment note; but when a married woman gives a mortgage and a judgment note accompanying it, and that mortgage has been executed according to the forms of law, as by examination separate and apart from her husband before a justice of the peace, and the contents made known to her, and executed formally without the coercion or compulsion of her husband—when that is done that becomes the security, and to that security the mortgagee—the seller of the land—must look.

" If you find that Mary E. Hubbard at the time of the execution of this bond was a married woman, there can be no recovery in this case against her.

The plaintiffs have not proceeded upon the mortgage; why they have not sold upon this mortgage we do not know. For some reason or other, they have ceased to proceed upon the mortgage, and have undertaken to bring suit upon the bond.

" We say that Mrs. Hubbard having given other security for the purchase money, she cannot be compelled to pay upon this bond. The reason of this is not that a married woman is more competent to give a bond for the payment of purchase money, than any other debts she may owe, but simply because the seller, having sold his land and taken no security therefor, the law will not permit her to hold the land and not pay for it, but when she has done what the law points out, to wit: the giving a mortgage, that is all that ought to be required of her.

" If you find that Mary E. Hubbard, on the 6th of February 1871, when she gave this bond, was a married woman, your verdict will be for her.] . . . . . . . . If you find from the evidence that when there was one thousand dollars due, Carr was to become the paymaster of that obligation to Chase, or whoever might hold the mortgage, and that, when that was paid, Mr. Hubbard would be relieved in consideration of that agreement, and it was the deed or purchase that Carr had here-

[Chase, to use *v.* Hubbard.]

tofore made from Hubbard, and that Watson and Pierce agreed to look to Carr, or to Carr's purchase of this undivided one-half interest, then they must look to Carr for it. And then, so far as A. S. Hubbard is concerned, that is evidence from which you may say this judgment is paid as to him."

Verdict and judgment for defendants. Plaintiffs thereupon took this writ, assigning for error the portion of the charge above cited in brackets.

*Guthrie* (with whom was *Byles*), for the plaintiffs in error, relied on Shnyder *v.* Noble, 13 Norris 286.

*Neill* and *Heywang*, and *S. Grumbine*, for the defendants in error.—The attempt was to enforce this bond as a personal obligation against Mrs. Hubbard. This could not succeed. Plaintiffs were entitled to a judgment in rem against the property purchased by her only : Schlosse's Appeal, 8 P. F. S. 493 ; Sawtelle's Appeal, 3 Norris 306 ; Quinn's Appeal, 5 Norris 447. It is, at any rate, clear from the verdict that the jury found for both defendants on the plea of payment.

Mr. Justice GORDON delivered the opinion of the court, January 2d 1882.

On February 6th 1871, Edward H. Chase and Sarah A. Chase sold and conveyed a lot of ground in the city of Titusville to the defendants, Asher S. Hubbard and Mary E., his wife, for the sum of $4,000—$1,000 of which were paid in hand on the delivery of the deed, and the balance was secured by a judgment bond and mortgage. On November 19th 1877 judgment was entered on this bond in the sum of $1,054.94, that being the amount alleged to be then due and unpaid. On the judgment thus entered execution was issued to September term, 1879, and afterwards, on application of the defendants, the court opened this judgment, as to all of it in excess of $743.54, with the interest thereon from July 9th 1877, equal to $840.44, which were paid into court. The judgment being thus opened, the parties went to trial on the pleas of " payment with leave," and as to Mary E. Hubbard, " coverture." On this latter plea the court instructed the jury : " If you find that Mary E. Hubbard, at the time of the execution of this bond, was a married woman there can be no recovery in this case as against her."

In view of the fact that the bond was executed by the feme covert and her husband to secure the purchase money of land sold to them, this ruling was erroneous. As this question has been fully discussed and settled in the case of Shnyder *v.* Noble, 9 W. N. C. 182 ; 13 Norris, 286, we need give it no farther

[Chase, to use *v.* Hubbard.]

attention, and were there nothing more in the pending suit, the judgment must be reversed. But on the plea of payment the facts were fully developed, and the jury, on those facts, found for the defendants. As, therefore, Asher S. Hubbard, the co-obligor and mortgagor, with his wife, was not protected by the plea of converture, it follows that the jury must, under the evidence, have found either that the mortgage was paid or, what is practically the same thing, that Hubbard and his wife were equitably discharged from the payment thereof. Under these circumstances it seems clear to us that the ruling of the court below, on the plea of coverture, did the plaintiffs no possible harm.

We think a brief review of the facts, as found by the jury, will demonstrate the rectitude of this conclusion. In May 1871 Hubbard and wife conveyed the one-half of the mortgaged premises to A. H. Carr for $2,000; one-half of this sum was paid by Carr to his vendors, and the other half he agreed to pay on the Chase mortgage. For this amount he also gave to the defendants his note, which, it seems, was never paid. This, however, is of no moment, inasmuch as the property thus sold was subject to the Chase mortgage, and under the arrangement between the defendants and Carr, if they were at any time forced to pay off this mortgage they would be entitled to subrogation as to Carr's part of the property. Then, in January 1879, Watson and Pierce, the use plaintiffs, with knowledge, as the jury have found, of the arrangement between the defendants and Carr, took an assignment of the Chase mortgage, and, afterwards, on September 11th of the same year, a sheriff's deed, made under a sale of Carr's interest in the property, on a judgment of P. T. Winthrop, was obtained by F. B. Guthrie, Esq., the agent or trustee of Watson and Pierce. This sale was expressly made subject to the mortgage above-mentioned. The transaction, then, stands thus: Watson and Pierce, now the owners of the Chase mortgage, buy Carr's interest in the premises, not only subject to that mortgage, but with full knowledge of the agreement between Carr and the defendants. Now, let us suppose that Hubbard and wife pay off this mortgage to Watson and Pierce, what would prevent them from claiming subrogation as against the land now owned by these very plaintiffs? for, to repeat, on the notice given by Guthrie himself, this land was bought subject to the mortgage, and all there was of it were the $1,000 which Carr, or Carr's land, was to pay. But as it would be to no purpose to compel the defendants to pay that, in relief of the plaintiff's property, which they would be entitled to recover back by the process of subrogation, the object is better accomplished by the release of the defendants from the payment of the mortgage and its accompanying bond. The ver-

[Huston *v.* Ticknor & Co.]

dict, then, which to us seems but reasonable and just, founded, as it is, upon the facts above detailed, renders the technical ruling of the court below, on the plea of coverture, of no moment whatever, since the result could not have been altered had the ruling been the converse of what it was.

The judgment is affirmed.